**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

**M. EDWARD WILSON, JR. M.D.,**

        **PLAINTIFF,**

**V.**

**PROGRESSIVE NORTHERN
INSURANCE COMPANY,**

        **DEFENDANT.**

**CA:** 2:25-cv-02581-BHH

**COMPLAINT
INSURANCE BAD FAITH
BREACH OF CONTRACT**

## TABLE OF CONTENTS

**PARTIES, JURISDICTION AND VENUE** ............................................................. 1

**FACTUAL ALLEGATIONS** .............................................................................. 2

**FOR A FIRST CAUSE OF ACTION (BREACH OF CONTRACT)** ........................... 9

**FOR A SECOND CAUSE OF ACTION (INSURANCE BAD FAITH / BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)** ....................... 10

**PRAYER FOR RELIEF** ................................................................................... 11

Plaintiff, complaining of Defendant, alleges:

### PARTIES, JURISDICTION AND VENUE

1. At all times pertinent, Plaintiff M. Edward Wilson, Jr., M.D. (Dr. Wilson) is and was a citizen and resident of Charleston County, South Carolina.

2. On information and belief, Defendant Progressive Northern Insurance Company ('Progressive') is a foreign insurance corporation (Ohio), a citizen of a state other than South Carolina, authorized to do business in South Carolina

and regularly conducts business, including engaging in the business of insurance in this State.

3. This Court has subject matter jurisdiction concerning the allegations of this Complaint as the matter in controversy between the Plaintiff and Defendant exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different States.

4. This matter is within the jurisdiction of this Court because of the amount in controversy and the complete diversity of citizenship between Plaintiff and Defendant pursuant to 28 U.S.C. § 1332(1).

5. This Court has personal jurisdiction over Defendant as substantial actions and/or inactions of the Defendant took place in the Charleston Division.

6. Pursuant to the South Carolina Long-Arm Statute, the Court has personal jurisdiction based upon the conduct of the Defendant. *See e.g.* S.C. Code Ann. § 36-2-803(1).

7. Venue is appropriate in the Charleston Division. 28 U.S.C.§ 121(1).

## FACTUAL ALLEGATIONS

8. Plaintiff Dr. Wilson was, at all times relevant, the named insured on an automobile insurance policy issued by Progressive, Policy Number 938635426, for the period of November 30, 2020 through May 30, 2021, which included

Underinsured Motorist (UIM) coverage in the amount of $500,000 per accident (combined single limit).

9. Dr. Wilson also maintained a $2,000,000 umbrella liability policy with Progressive, Policy Number 67074482-0, for the period of May 30, 2020 through May 30, 2021, evidencing his status as a responsible and loyal Progressive customer who had paid substantial premiums for comprehensive insurance protection.

10. Inherent in any contract for insurance are the duties of good faith and fair dealing.

11. Progressive engages in advertising and marketing and has made statements about its services that includes:

   a. "From customized auto insurance to superior claims service, our people and technology will support you every step of the way."

      https://www.progressive.com

   b. "Buckle up with protection you can rely on."

      https://www.progressive.com

   c. "Whether it's on the road, in the home, or in business, at the heart of Progressive is a deep-rooted dedication to helping our customers make

progress. By offering unparalleled coverage and unwavering care, we're there when they need us most." https://www.progressive.com/about/

d. "We revere honesty and adhere to high ethical standards to gain the trust and confidence of our customers."

https://www.progressive.com/about/core-values/

12. Under South Carolina law, an insurer engages in improper claims practices if it committed without just cause and performed with such frequency as to indicate a general business practice "[c]ompelling policyholders . . . to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies..." S.C. Code Ann. § 38-59-20.

13.  South Carolina appellate courts repeatedly have affirmed the rights of an insured to seek actual and punitive damages for an insurer's bad faith failure to reasonably adjust the insured's claim. *Nichols v. State Farm Mutual Auto. Ins.*, 297 S.C. 336, 306 S.E.2d 616 (1983).

14. On April 12, 2021, while walking in a pedestrian crosswalk, Dr. Wilson was struck by a Ford Expedition owned and operated by a limousine company.

15. The collision was captured on a security camera video, which showed the severity of the impact and the fault of the limo driver.

16. Dr. Wilson suffered multiple femoral fractures, which required surgery with the placement of hardware, months of physical therapy, and other treatment.

17. As a result of his injury, he has suffered permanent partial impairment to his left leg and hip. The injuries and impairment affect his daily professional and personal activities and cause significant pain and suffering.

18. As a result of his injuries and impairment, Dr. Wilson is retiring early from his job as a pediatric ophthalmologist at the Medical University of South Carolina and Storm Eye Institute, with a loss of future income exceeding $3,000,000.

19. The vehicle that struck Dr. Wilson carried liability insurance of $1.5 million.

20. Dr. Wilson resolved his claim against the limo company and driver within the policy limits without filing suit, in exchange for a covenant not to execute judgment against them.

21. Dr. Wilson then sought to recover from the $500,000 UIM policy he purchased from Progressive.

22. On December 27, 2021, Dr. Wilson provided Progressive with screenshots from the collision video, extensive medical records, medical bills, and other information to substantiate his claim.

23. Progressive ultimately offered $13,500 to settle his claim.

24. On June 17, 2022, Dr. Wilson filed suit in Charleston County, C.A. No. 22-CP-10-02743.

25. Dr. Wilson served Progressive with the Summons and Complaint pursuant to S.C. Code Ann. § 38-77-160.

26. During litigation, Dr. Wilson repeatedly offered to resolve his claim for less than Progressive's limits.

27. Despite receiving the security video, X-rays of Dr. Wilson's hip and broken leg, medical records, expert reports, and other materials supporting Dr. Wilson's damages, Progressive responded to settlement demands within the policy limits with a series of unreasonably low settlement offers ranging between $10,000 and $15,000.

28. On Nov. 30, 2022, Progressive offered to settle Dr. Wilson's claim for $10,000.

29. On Dec. 8, 2022, Dr. Wilson offered to settle his claim against Progressive within the policy limits for $475,000.

30. On Dec. 15, 2022, Progressive offered to settle Dr. Wilson's claim for $13,500.

31. On May 1, 2023, at the required mediation related to C.A. No. 22-CP-10-02743 and the UIM coverage, Progressive offered to settle Dr. Wilson's claim for *less* than the previously offered $13,500.

32. On May 18, 2023, following mediation, Dr. Wilson sent Progressive a second

    *Nichols v. State Farm* letter offering to resolve his claim for $487,000.

33. The letter warned "the so-called settlement efforts by Progressive are

    unconscionable and we believe a jury would agree."

34. On June 20, 2023, Progressive responded with a settlement offer of $15,000.

35. Dr. Wilson rejected that offer.

36. On June 13, 2024, Progressive filed a Rule 68 Offer of Judgment for $50,000 in

    "new money."

37. Had Dr. Wilson failed to obtain a verdict of at least $1,550,000, pursuant to

    Rule 68, Progressive would have forced him to pay Progressive's costs and

    interest.

38. Trial was set for March 17, 2025.

39. The week before trial, Progressive offered $100,000.

40. Plaintiff rejected the offer.

41. Throughout litigation, despite the obvious and well-documented injuries to Dr.

    Wilson, including his sizeable future economic losses, Defendant Progressive

    refused to engage in good faith negotiations and instead forced Dr. Wilson to

    proceed to trial, thereby exposing its own insured to unnecessary emotional and

    financial costs and strain.

42. At trial, Dr. Wilson presented expert testimony from:

    a.  an economist, who projected over $3,222,000 in lost future income;

    b.  a Board-certified orthopedic surgeon who twice performed an independent medical examination of Dr. Wilson and determined he had suffered 18% impairment to his lower extremity (leg and hip), as well as traumatic osteo-arthritis and permanent deficits in strength and range of motion; and

    c.  Other medical and fact witnesses supporting his injuries, causation, and damages.

43. Progressive did not contest liability.

44. Progressive did not retain or present any expert witnesses at trial to contradict Dr. Wilson's experts.

45. Progressive did not present any credible evidence challenging the extent of Dr. Wilson's injuries or damages.

46. In closing argument, Progressive's attorney referred to Dr. Wilson's injuries as "relatively minor."

47. The jury returned a verdict in favor of Dr. Wilson for $3,350,000 in actual damages.

48. Circuit Judge Deadra L. Jefferson denied Progressive's Judgment Not Withstanding the Verdict motion.

49. The jury's verdict exceeded the available liability and UIM coverage **combined** by $1,350.000.

50. Even so, Progressive has refused to tender the $500,000 policy limits unless Dr. Wilson agrees to release any and all bad faith claims against Progressive.

51. Progressive's conduct throughout the handling of this claim is and has been unreasonable, without proper cause, and in direct contravention of the duties owed to its insured.

52. Its conduct constitutes improper claims practices under S.C. Code Ann. § 38-59-20.

53. Progressive's conduct throughout the handling of this claim was unreasonable, without proper cause, and in direct contravention of the duties owed to its insured.

### FOR A FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

54. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

55. Dr. Wilson and Progressive were parties to a valid insurance contract that included UIM coverage.

9

56. Dr. Wilson complied with all material terms and conditions of the policy, including cooperation, notice, and the like.

57. Progressive breached the contract by failing and refusing to pay Dr. Wilson UIM benefits owed even after a jury verdict far in excess of the policy limits.

58. As a result of Progressive's breach, Dr. Wilson has suffered actual damages, including unpaid policy benefits, pre- and post-judgment interest and consequential losses and damages.

### FOR A SECOND CAUSE OF ACTION (INSURANCE BAD FAITH / BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

59. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

60. Progressive owed Dr. Wilson various duties, including a duty of good faith and fair dealing, in the adjustment and payment of his UIM claim.

61. Progressive breached these duties through acts and omissions including, but not limited to:

   a. Failing to reasonably investigate and evaluate the claim;

   b. Ignoring clear liability and overwhelming evidence of damages far in excess of Progressive's policy limit;

   c. Refusing to pay a reasonable settlement demand supported by expert opinion and other evidence;

    d. Forcing Dr. Wilson to expend time, money and effort to go to trial without justification;

    e. Failing to present any witnesses or evidence contradicting Dr. Wilson's claim for damages; and

    f. Even after the excess verdict, for conditioning payment of undisputed policy benefits on the forfeiture of Dr. Wilson's legal right to assert a claim for bad faith.

62. Progressive's conduct was willful, wanton, and in reckless disregard of Dr. Wilson's rights under South Carolina law.

63. As a result of Progressive's conduct, Dr. Wilson has and will continue to suffer financial harm, emotional distress, attorney's fees, litigation expenses, and loss of the use of funds to which he was entitled, including the loss of the benefit and interest on those funds for a period of more than three years.

64. Dr. Wilson is entitled to such amount of damages as the jury shall determine, actual and otherwise, including pre- and post-judgment interest, for Progressive's bad faith and oppressive misconduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Progressive Northern Insurance Company as follows:

1. For actual damages, including unpaid policy benefits and consequential losses;

2. For attorney's fees, litigation costs, and pre-judgment interest and post-judgment interest;

3. For punitive damages;

4. For a trial by jury on all issues so triable; and

5. For such other and further relief as this Court deems just and proper.

KAHN LAW FIRM, LLP
s/ JUSTIN S. KAHN [FED. ID. NO. 5779]
WES B. ALLISON [FED. ID. NO. 11507]
PO BOX 31397
CHARLESTON, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
WALLISON@KAHNLAWFIRM.COM
ATTORNEYS FOR PLAINTIFF