IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| M. EDWARD WILSON, JR. M.D., | CA: 2:25-CV-02581-BHH |
| PLAINTIFF, | FIRST SUPPLEMENTAL COMPLAINT |
| V. | |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | INSURANCE BAD FAITH BREACH OF CONTRACT |
| DEFENDANT. | JURY TRIAL DEMANDED |

TABLE OF CONTENTS

PARTIES, JURISDICTION AND VENUE ..................................................... 2

FACTUAL ALLEGATIONS ........................................................................ 3
    Progressive and Insurance Policy ............................................................ 3
    The Collision and Injuries ...................................................................... 4
    The Underlying Claim and Liability Coverage Credit .............................. 5
    Presentation of UIM Claim ..................................................................... 5
    Progressive's UIM Lawsuit Conduct ....................................................... 6
    Verdict and Judgment ............................................................................ 6
    Progressive Refuses to Pay ..................................................................... 7
    Additional Improper Post Filing Conduct ............................................... 7
    Improper Appeal .................................................................................... 8
    Lack of Reasonable Basis ....................................................................... 9
    Nature of Defendant's Conduct ............................................................. 10

FIRST CAUSE OF ACTION (BREACH OF CONTRACT) .............................. 12

SECOND CAUSE OF ACTION (BAD FAITH / BREACH OF IMPLIED COVENANT) 12

PRAYER FOR RELIEF .......................................................................... 15

**PLAINTIFF M. EDWARD WILSON, JR., M.D., COMPLAINING OF DEFENDANT PROGRESSIVE NORTHERN INSURANCE COMPANY, ALLEGES:**

1. This supplemental pleading sets out new improper transactions, occurrences or events by Progressive after the filing of this lawsuit.

### PARTIES, JURISDICTION AND VENUE

2. At all times pertinent, Plaintiff M. Edward Wilson, Jr., M.D. (Dr. Wilson) is and was a citizen and resident of Charleston County, South Carolina.

3. On information and belief, Defendant Progressive Northern Insurance Company ('Progressive') is a foreign insurance corporation (Ohio), a citizen of a state other than South Carolina, authorized to do business in South Carolina and regularly conducts business, including engaging in the business of insurance in this State.

4. This Court has subject matter jurisdiction concerning the allegations of this Complaint as the matter in controversy between the Dr. Wilson and Progressive exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different States.

5. This matter is within the jurisdiction of this Court because of the amount in controversy and the complete diversity of citizenship between Dr. Wilson and Progressive pursuant to 28 U.S.C. § 1332(1).

6. This Court has personal jurisdiction over Defendant as substantial actions and/or inactions of the Defendant took place in the Charleston Division.

7. Pursuant to the Long-Arm Statute, the Court has personal jurisdiction based upon the conduct of Progressive. *See e.g.* S.C. Code Ann. § 36-2-803(1).

8. Venue is appropriate in the Charleston Division. 28 U.S.C.§ 121(1).

### FACTUAL ALLEGATIONS

**PROGRESSIVE AND INSURANCE POLICY**

9. At all relevant times, Dr. Wilson was the named insured under an automobile insurance policy issued by Progressive (Policy No. 938635426), which included $500,000 in Underinsured Motorist ("UIM") coverage.

10. Dr. Wilson also had a Progressive umbrella policy, evidencing his reliance on it to provide coverage and protection in the event of catastrophic injury.

11. On information and belief, to entice new customers and keep existing ones, Progressive engaged in advertising and marketing about its insurance and has made statements about its services that includes:

    a. "From customized auto insurance to superior claims service, **our people and technology will support you every step of the way**."[1]

---

[1] https://www.progressive.com [last visited 2026.04.05]. emphasis added

b. "Buckle up with **protection you can rely on**."[2]

c. "Whether it's on the road, in the home, or in business, at the heart of Progressive is a deep-rooted **dedication to helping our customers** make progress. By offering unparalleled coverage and unwavering care, **we're there when they need us most**."[3]

d. "We revere honesty and adhere to **high ethical standards to gain the trust and confidence of our customers**."[4]

12. At all relevant times, a valid and binding insurance contract existed between Dr. Wilson and Progressive.

13. Under Part III of the policy related to UIM coverage, Progressive agreed to: "pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle."

**THE COLLISION AND INJURIES**

14. On April 12, 2021, Dr. Wilson was lawfully walking in a pedestrian crosswalk when he was struck by a vehicle.

15. The vehicle was operated negligently and recklessly by a limousine driver.

---

[2] https://www.progressive.com [last visited 2026.04.05]. emphasis added

[3] https://www.progressive.com/about/[last visited 2026.04.05]. emphasis added

[4] https://www.progressive.com/about/core-values/ [last visited 2026.04.05]. emphasis added

16. The collision was severe and was captured on video.

17. Dr. Wilson suffered multiple femoral fractures and other serious injuries requiring surgery, hardware implantation, and extensive rehabilitation.

18. Dr. Wilson has sustained permanent impairment, including lasting deficits in mobility, strength and function and was forced to retire early, resulting in loss of future income exceeding $2,000,000.

## THE UNDERLYING CLAIM AND LIABILITY COVERAGE CREDIT

19. The at-fault driver carried $1.5 million in liability coverage.

20. Dr. Wilson resolved his claims against the tortfeasor for payment of liability coverage funds and a covenant not to execute.

21. Progressive was entitled to credit for the $1.5 million limit of liability coverage.

## PRESENTATION OF UIM CLAIM

22. By December 2021, Progressive had notice of Dr. Wilson's UIM claim and of the liability settlement.

23. Dr. Wilson provided Progressive with evidence of liability and damages, including medical records, imaging studies, documentation of permanent impairment, evidence of loss of earning capacity, visual evidence of the collision, and expert-supported economic losses.

24. Dr. Wilson's damages substantially exceeded the available liability limits.

**PROGRESSIVE'S UIM LAWSUIT CONDUCT**

25. Despite clear liability and evidence of substantial damages, Progressive failed to reasonably evaluate or pay the claim.

26. Progressive offered nominal settlement amounts (around $10,000–$15,000).

27. Those offers bore no reasonable relationship to Dr. Wilson's documented bodily injuries and losses.

28. As a result of Progressive's failure to act reasonably, Dr. Wilson was forced to file and serve a lawsuit which Progressive answered as UIM carrier.

**VERDICT AND JUDGMENT**

29. On March 19, 2025, the jury returned a verdict of $3,350,000.

30. The verdict is clear evidence that the injuries and damages suffered by Dr. Wilson were well in excess of the liability and UIM coverage.

31. On March 25, 2025, the trial court entered judgment in the amount of $1,850,000, after setoff of the settlement from the limousine company's $1.5 million liability coverage.

32. The judgment exceeded the available Progressive UIM coverage.

33. By this point Progressive had actual knowledge that the damages Dr. Wilson had were sustained from a bodily injury caused by an accident arising out of an underinsured motor vehicle.

**PROGRESSIVE REFUSES TO PAY**

34. Despite its contractual obligation to pay Dr. Wilson, Progressive refused to pay the $500,000 UIM coverage.

35. Instead, on March 24, 2025 at 6:13 p.m., Progressive sent an email from its attorney stating "My client stands prepared to cut a $500,000 check in full satisfaction of the judgment in this matter. **In exchange, all parties would agree to forego any post-trial motions** and **any bad faith actions**. Please let me know if that is acceptable to your client. Thanks." (emphasis added).

36. This email is an admission that Progressive knew the UIM benefits were owed.

37. This email shows that Progressive was improperly withholding payment of those benefits to obtain a release of its "bad faith actions."

38. As a result of the improper conduct of Progressive, Dr. Wilson filed this action on March 26, 2025.

39. This was after entry of judgment when Progressive had no proper or legal basis to withhold payment of the UIM benefits owed under the policy.

**ADDITIONAL IMPROPER POST FILING CONDUCT**

40. As time has progressed, Progressive has engaged in new improper conduct, Dr. Wilson has been forced to supplement the Complaint.

41. After filing this lawsuit, after its obligation to pay had arisen, Progressive engaged in additional improper conduct to delay payment owed including:

   a. On March 28, 2025, in clear violation of the trial court's instructions to argue all post-trial motions on March 19, 2025, Progressive filed another post-trial motion;

   b. This improper and untimely motion forced Dr. Wilson to respond on March 31, 2025;

   c. On June 5, 2025, the trial court issued an order finding Progressive's March 28 motion was "not timely and is without merit."

42. The June 5, 2025 order further confirms that Progressive lacked any reasonable basis for its refusal to pay Dr. Wilson's claim under the policy.

**IMPROPER APPEAL**

43. To further improperly delay payment owed to Dr. Wilson, on July 1, 2025 Progressive filed a notice of appeal with the South Carolina Court of Appeals.

44. The appeal was from the denial of Progressive's untimely and meritless post-trial motion.

45. Dr. Wilson was forced to respond to the untimely notice of appeal.

46. Because the appeal was untimely, it was jurisdictionally defective and incapable of providing any legitimate basis for Progressive to not pay what was owed to its insured Dr. Wilson.

47. Dr. Wilson was required to incur additional attorney's fees and costs to respond to the untimely notice of appeal.

48. On March 19, 2026, the South Carolina Court of Appeals agreed with Dr. Wilson and dismissed Progressive's appeal for lack of subject matter jurisdiction.

49. The dismissal means Progressive's appeal did not constitute a valid exercise of its right to litigate, but rather an improper delay of payment of benefits that were already due under the policy.

50. There was no valid basis for Progressive to withhold payment at the time it evaluated Dr. Wilson's claim and made the decision to appeal.

**LACK OF REASONABLE BASIS**

51. Progressive's improper conduct includes failing to reasonably evaluate and pay Dr. Wilson's claim which resulted in its improper refusal to pay before filing suit in the UIM case, after judgment was entered in the UIM case, after filing an untimely post-trial motion and untimely filing a notice of appeal.

52. Progressive's improper actions and court holdings that the actions were untimely and without merit are evidence that Progressive lacked any reasonable basis each time it evaluated and did not pay Dr. Wilson's claim and further confirms that no legitimate basis ever existed to withhold payment.

53. As a direct and proximate result of Progressive's improper and unreasonable refusal to pay Dr. Wilson's claim, he has suffered specific and measurable damages including:

   a. Loss of payment and use of $500,000 in insurance benefits for more than one year;

   b. Loss of interest, including pre and post judgment, and investment value of those funds;

   c. Attorney's fees and litigation expenses;

   d. Costs related to the trial, post-trial and appellate proceedings;

   e. Financial and emotional harm; and

   f. Other such further and proper damages as a jury may determine.

## NATURE OF DEFENDANT'S CONDUCT

54. Progressive's bad faith should be considered based on the information available to it at the time it evaluated Dr. Wilson's claim and through the time this

10

lawsuit was supplemented with new and additional improper conduct of Progressive.

55. Dr. Wilson does not base his claims merely on Progressive's participation in this litigation.

56. As of this latest filing, Progressive has no reasonable or legitimate basis to refuse payment of the UIM benefits owed under the policy.

57. Rather, Progressive's bad faith arises from its failure to reasonably evaluate and pay Dr. Wilson's claim based on the information it had and available to it.

58. Progressive's refusal to pay Dr. Wilson's claims at each time set forth herein is evidence that it lacked any reasonable basis it evaluated and denied or refused to pay Dr. Wilson's claim and further confirms its lack of any legitimate basis to withhold payment.

59. Each time Progressive evaluated and failed to pay Dr. Wilson's UIM claim, it possessed sufficient information to conclude the full UIM coverage was owed.

60. Progressive nevertheless failed to exercise an honest and informed judgment and lacked any objectively reasonable basis to refuse payment of the claim.

61. As a direct result of Progressive's improper conduct, Dr. Wilson has been harmed and damaged.

### FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

62. Dr. Wilson realleges all prior paragraphs.

63. A valid insurance contract existed between Dr. Wilson and Progressive.

64. Dr. Wilson satisfied all conditions under the policy.

65. Progressive's duty to pay UIM benefits arose no later than March 25, 2025.

66. Progressive breached the contract by failing and refusing to pay UIM benefits after its obligation became due.

67. As a direct result, Dr. Wilson suffered damages including:

   a. Unpaid policy benefits of at least $500,000;

   b. Loss of use of funds;

   c. Interest, pre and post judgment;

   d. Attorneys' fees and costs; and

   e. Such other and proper damages and losses as may be shown.

### SECOND CAUSE OF ACTION (BAD FAITH / BREACH OF IMPLIED COVENANT)

68. Dr. Wilson realleges all prior paragraphs.

69. Progressive owed Dr. Wilson various duties, including a duty of good faith and fair dealing.

70. Progressive breached the duties owed to Dr. Wilson by repeatedly acting unreasonably and without proper cause.

71. Progressive's conduct is a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim.

72. At all relevant times, there was no reasonable or legitimate basis for Progressive to refuse to pay the UIM benefits owed under the policy.

73. After its obligation to pay coverage was due, Progressive improperly refused to pay and forced Dr. Wilson to take affirmative actions, including filing a UIM lawsuit, engaging in a trial, filing post-trial and appellate motions.

74. Progressive's conduct was not legitimate and instead served only to delay payment of benefits that were already due.

75. Progressive's improper conduct to deny, delay and/or deprive Dr. Wilson of benefits and funds included:

    a.  Repeatedly failing to reasonably evaluate Dr. Wilson's claim;

    b.  Repeatedly ignoring clear liability and damages exceeding the coverage;

    c.  Repeatedly making inadequately low settlement offers;

    d.  Failing to pay Dr. Wilson's claim despite having no reasonable basis to do so at the time of each evaluation;

    e.  After trial, conditioning payment of the UIM coverage owed on waiving of post-trial motions and bad faith claims;

    f.  Filing a post-trial motion that was untimely and without merit;

13

g.  Filing a jurisdictionally defective appeal; and

h.  Other such improper, reckless, wanton and intentional misconduct.

76. Progressive's improper conduct was willful, wanton, and in reckless disregard of Dr. Wilson's rights.

77. As a direct and proximate result of Progressive's bad faith conduct, Dr. Wilson has suffered specific and measurable consequential damages, including:

a. Loss of $500,000 in insurance benefits beginning at least as of March 25, 2025 and continuing to the present;

b. Loss of use, interest, investment returns, and economic opportunity associated with those funds;

c. Additional attorneys' fees and litigation expenses incurred in responding to improper post-trial motions and defending an untimely appeal;

d. Additional delay in financial recovery following catastrophic injury, including inability to access funds needed for financial planning and medical-related needs; and

e. Other pecuniary losses to be proven at trial.

78. Dr. Wilson is entitled to such amount of damages and losses, including actual and punitive that a jury may decide.

14

**PRAYER FOR RELIEF**

**WHEREFORE**, Dr. Wilson respectfully requests judgment against Progressive Northern Insurance Company as follows:

1.  For such amount of actual and consequential damages arising from Progressive's breach and bad faith;

2.  A declaration that Progressive breached the insurance contract and acted in bad faith and for all damages permitted under law for insurer bad faith;

3.  For attorney's fees, litigation costs, and all pre-judgment and post-judgment interest allowed by law, including interest on policy benefits wrongfully withheld;

4.  For punitive damages;

5.  For a trial by jury on all issues so triable; and

6.  For such other and further relief as this Court deems just and proper.

**KAHN LAW FIRM, LLP**
S/ JUSTIN S. KAHN [FED. ID. NO. 5779]
WES B. ALLISON [FED. ID. NO. 11507]
PO BOX 31397
CHARLESTON, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
WALLISON@KAHNLAWFIRM.COM
**ATTORNEYS FOR PLAINTIFF**

APRIL 23, 2026