**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**CASE NUMBER:  2:25-cv-02581-BHH**

| | |
|---|---|
| M. Edward Wilson, J.R. M.D.,<br><br>                                        Plaintiff,<br><br>v.<br><br>Progressive Northern Insurance Company,<br><br>                                        Defendant. | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

Defendant Progressive Northern Insurance Company ("Progressive Northern"), by and through its undersigned counsel, hereby submits its Response in Opposition to Plaintiff's Motion to Compel Discovery [ECF No. 38].

## SUMMARY

Plaintiff asserts bad faith and breach of contract causes of action against Progressive Northern based on Progressive Northern not paying underinsured motorist ("UIM") coverage before resolution of the underlying action. As a matter of law, Plaintiff's claims are without merit. First, the South Carolina Legislature has given UIM insurers the statutory right to defend underlying *ex delicto* actions for their own benefit. S.C. Code § 38-77-160. South Carolina courts have repeatedly held that there is no bad faith if there is a reasonable basis for contesting a claim. Therefore, if there is a reasonable basis for contesting liability **OR** damages in the underlying action, then an insurer does not act in bad faith or breach the insurance contract by defending the underlying action and waiting to pay UIM coverage until the underlying action is finally resolved. ***Here, the Plaintiff took hundreds of thousands of dollars less than the available liability limits***

1

– *specifically $340,000*. As a matter of law, this provides a reasonable basis for the UIM carrier contesting whether Plaintiff's damages exceed the liability coverage.[1]

Plaintiff's Complaint and discovery are premised on the idea that under these circumstances the duty of good faith and fair dealing requires a UIM insurer to make settlement offers before trial of the underlying auto accident case and abandon its statutory right to defend that case to completion for its own benefit. [ECF No. 38, Pl.'s Mot. to Compl. Mem., p. 10 ("First, Progressive must agree it owed a continuing duty of good faith, and it was required to consider all new information to fairly determine a reasonable settlement value.")].  As explained more fully below, that is not the law in South Carolina. If an insurer has a reasonable ground for contesting a claim, there is no bad faith. If an insurer pays its UIM limits after entry of final judgment against an underinsured motorist, there is no breach of contract. Plaintiff's faulty view of South Carolina law resulted in discovery requests that were consistently outside the scope of Rule 26's discovery limitations (relevancy, privilege, and proportionality). Therefore, Progressive Northern requests that Plaintiff's Motion to Compel be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.     The Progressive Northern Policy only provides UIM coverage for amounts the insured is <u>legally entitled to recover</u> from an <u>underinsured</u> motorist.**

Progressive Northern issued a personal auto policy, Policy No. 938635426, to Marion E Wilson and Donna Wilson with effective dates of November 30, 2020 to May 30, 2021 (hereinafter the "Policy"). (Ex. A, Policy). The Policy includes a $500,000 UIM combined single limit. (*Id.*). The Policy provides in pertinent part:

### PART III – UNINSURED/UNDERINSURED MOTORIST COVERAGE

---

[1] On April 30, 2025, Progressive Northern filed Motion to Dismiss on this basis [ECF No. 10]. When the Court granted the Motion to Stay, it declared the Motion to Dismiss moot [ECF No. 27]. However, the Motion to Dismiss is no longer moot. Progressive Northern renews its Motion to Dismiss.

***

**INSURING AGREEMENT – UNDERINSURED MOTORIST COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of:

1. an **underinsured motor vehicle** because of **bodily injury**:
   a. sustained by an **insured person**;
   b. caused by an accident; and
   c. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**; or
2. an **underinsured motor vehicle** because of **property damage**:
   a. caused by an accident; and
   b. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.

***

(*Id.* at p. 19). Thus, the trigger for UIM coverage is that the insured is legally entitled to recover damages from the owner or operator of an underinsured motor vehicle.

II. **Plaintiff settles his claims against the alleged at-fault parties for <u>$340,000 less than the available liability coverage.</u>**

On April 12, 2021, the Plaintiff was involved in a pedestrian-vehicle accident with a vehicle owned by a limousine company. [ECF No. 33, Second Am. Compl. ¶ 14]. The vehicle that struck Plaintiff carried liability insurance coverage limits of $1,500,000.00. [*Id.* at ¶ 19]. The liability carrier is Philadelphia Indemnity Insurance Company. The Plaintiff settled with the liability carrier in exchange for a covenant not to execute. *[Id.* at ¶ 20]. Despite the available liability coverage limits of $1,500,000.00, the Plaintiff settled his claim against the driver and limousine company for $1,160,000.00 – ***more than $300,000.00 less than the available liability policy limits***. (Ex. B, Covenant Not To Execute).

III. **Plaintiff brings this premature bad faith/breach of contract action against Progressive Northern before resolution of the Underlying Action.**

The Plaintiff brought suit against the driver and limousine company to recover UIM coverage under the Progressive Northern Policy. [ECF No. 1, Compl. ¶¶ 21, 24-25]. On June 17,

2022, Wilson filed suit in the Charleston County Court of Common Pleas against Marquee Limo Co., LLC and Paul Brown, Civil Action No. 2022-CP-10-02743 (the "Underlying Action"). [ECF No. 1, Compl. ¶¶ 21, 24-25]; (Ex. C, Underlying Action Public Index). On March 25, 2025, the court in the Underlying Action entered an Order denying Progressive Northern's Rule 50 Motion for Judgment Notwithstanding the Verdict. (Ex. C, Underlying Action Public Index). Despite the Underlying Action being ongoing and judgment not having been finalized in that case, Plaintiff filed this action just one day later **on March 26, 2025**. [ECF No. 1, Compl.]. At that time, the period for appealing the Underlying Action had not ended. *See* Rule 203(b)(1), SCACR (giving the parties 30 days after receipt of written notice of entry of the order granting or denying a Rule 50 motion). In the Underlying Action, Progressive Northern filed several post-trial motions and an appeal. It was not until almost a year later, on March 19, 2026, that the appeal was dismissed. On April 4, 2026, the Court of Appeals sent the remittitur to the trial court. (Ex. C, Underlying Action Public Index). At that time, there was a final judgment in the Underlying Action.

**IV.     Upon resolution of the Underlying Action, Progressive Northern paid Plaintiff the Policy's UIM limit, paid appellate costs, and offered to pay interest on the UIM limit.**

The judgment in the Underlying Action was entered against Marquee Limo Co., LLC – not Progressive Northern. (Ex. D, March 25, 2025 Underlying Order). As a result of the final judgment after remittitur, Progressive Northern paid Plaintiff the Policy's $500,000 UIM limit and the appellate costs. Progressive Northern has also offered to pay Plaintiff interest on the UIM limit from the date of the remittitur to the date of payment of that UIM limit – even though the Progressive Northern Policy does not provide for the payment of interest. Consequently, Progressive Northern has fulfilled all of its duties under the Policy with respect to the April 12, 2021 auto accident.

V.    **South Carolina Law**

    **A. UIM insurers have a statutory right to defend underlying actions for their own benefit.**

The South Carolina Legislature has given UIM carriers the right to appear and defend in an underlying action for their own benefit:

> The *insurer has the right to appear and defend* in the name of the underinsured motorist in any action which may affect its liability….In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured by payment of its applicable liability limits on behalf of its insured, the underinsured motorist *insurer may assume control of the defense of action for its own benefit.*

S.C. Code § 38-77-160 (emphasis added); *see also Williams v. Selective Ins. Co. of Se.*, 315 S.C. 532, 534, 446 S.E.2d 402, 404 (1994) ("We note that the intent of § 38–77–160 is to protect an insurance carrier's right to contest its liability for underinsured benefits."). The right to defend includes the right to present pre-trial defenses, trial defenses, post-trial defenses and appellate defenses. *See Ex parte Allstate Ins. Co.*, 339 S.C. 202, 205, 528 S.E.2d 679, 681 (Ct. App. 2000) (recognizing that a UIM carrier's "right to defend" includes the "right to protect itself during the early stages of the lawsuit", at trial, and "the right to participate in post-trial motions or appeal").

In addition, the South Carolina Supreme Court has repeatedly held that "[i]f there is a reasonable ground for contesting a claim, there is no bad faith." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 360, 415 S.E.2d 393, 397 (1992); *In re Mt. Hawley Ins. Co.*, 427 S.C. 159, 170, 829 S.E.2d 707, 714 (2019) (same); *Reeves v. S.C. Mun. Ins. & Risk Fin. Fund*, 434 S.C. 18, 35, 862 S.E.2d 248, 257 (2021) (same).

Taken together, if a UIM insurer has a reasonable ground for contesting liability or damages, then the UIM insurer does not breach the contract or commit bad faith by refusing to pay

its UIM limits before resolution of the underlying action. To hold otherwise would circumvent the UIM insurer's statutory right to defend for its own benefit.

### B. Value disputes about a claim are not a valid basis for a bad faith claim.

South Carolina courts have repeatedly held that a UM or UIM insurer miscalculating how much a jury is likely to award an insured is not a basis for a bad faith claim. *See, e.g., Hood v. United Servs. Auto Ass'n*, 445 S.C. 1, 5, 910 S.E.2d 767, 769 (2025); *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 454 (D.S.C. 2008); *Henry v. Gov't Emps. Ins. Co.*, 275 F. Supp. 3d 750, 754–55 (D.S.C. 2017); *Stewart v. State Farm Fire & Cas. Co.*, No. 2:11-CV-03020-DCN, 2013 WL 3206553 (D.S.C. June 24, 2013); *Collins v. Auto-Owners Ins. Co.*, 438 F. App'x 247, 248 (4th Cir. 2011) (applying South Carolina law) (affirming dismissal of bad faith and breach of contract claim). "Estimating likely jury verdicts is by its very nature an unpredictable pursuit, and from time to time juries are bound to return verdicts that are either substantially more or substantially less than the insurer's estimates upon which its settlement offers were based." *Snyder*, 586 F. Supp. 2d at 462; *see also* [ECF No. 33, Second Am. Compl. ¶ 30 (arguing that "[t]he [jury] verdict is clear evidence that the injuries and damages suffered by Dr. Wilson were well in excess of the liability and UIM coverage")].

In a similar case, the UIM carrier and the insured valued the case differently. *Hood v. United Servs. Auto Ass'n*, 445 S.C. 1, 5, 910 S.E.2d 767, 769 (2025). After mediation, the insured and insurer were still $400,000 apart in their offers. *Id.* (the insurer offered $200,000 and the insured agreed to take $600,000). The trial against the underinsured motorist resulted in a judgment in excess of the UIM insurer's $1,000,000 limit, even with a 49% reduction for the insured's fault. *Id.* The insurer then paid its UIM limit to the insured. *Id.*

The insured brought a bad faith claim against her UIM carrier. The Court of Appeals held that no reasonable jury could find that the UIM carrier acted in bad faith and the Supreme Court affirmed, explaining:

> ***Once Johnson settled with Hood, USAA was allowed to step into Johnson's shoes to litigate the UIM Action for its own benefit; it was not required to simply hand over the UIM policy limits to Hood.*** *See* S.C. Code Ann. § 38-77-160 (2015) (providing an underinsured motorist (UIM) carrier "has the right to appear and defend in the name of the [UIM] in any action which may affect its liability"); *Williams v. Selective Ins.*, 315 S.C. 532, 534, 446 S.E.2d 402, 404 (1994) ("[T]he intent of § 38-77-160 is to protect the insurance carrier's right to contest its liability for underinsured benefits."); *Crawford v. Henderson*, 356 S.C. 389, 398, 589 S.E.2d 204, 209 (Ct. App. 2003) ("[O]nce the named defendant has settled for his liability policy limits, he no longer has a stake in the outcome of the litigation. The UIM carrier, on the other hand, still has a viable, financial interest in the case. As a result, the attorney for the UIM carrier represents the carrier and not the named defendant."). USAA acted within its rights under the UIM policy in not disclosing its reserves or authority and as any other party would be expected to act in the adversarial process.

*Id.* at 13, 910 S.E.2d at 773–74 (emphasis added).

In another similar case, the insured and UIM carrier also had different valuations of the UIM claim. *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 454 (D.S.C. 2008). The liability insurer settled with the insured for $75,000 in liability coverage. *Id*. The available UIM coverage was $115,000. *Id.* The UIM insurer underestimated the value of the insured's claim, and the jury returned a large verdict. However, the court held that this was not a basis for a bad faith refusal to pay claim:

> [I]t is simply illogical that State Farm would have behaved in the manner alleged by the Plaintiff. Even had State Farm been solely concerned with saving itself as much money as possible under the circumstances, it would not have taken the course of action it took in the present case had it known what the jury was going to award Snyder on his bodily injury claim. If, as required by *Myers*, it were "clear" to State Farm that Snyder suffered damages "greatly in excess" of Knight's $75,000 liability limit, no rational explanation has been offered, and there is none that the court can discern, as to how State Farm's actions would have somehow resulted in State Farm avoiding having to pay Snyder the benefits due to him.

If State Farm knew that Snyder's claim was worth in excess of $180,000 (the $75,000 in Knight's liability coverage plus the $115,000 in UIM coverage through his policy and Bufano's policy), the last course of action it would have wanted to take would have been to insist upon taking Snyder to trial where he would have an opportunity to put his case before a jury. State Farm would have been more proactive in settlement negotiations. Most obviously, if it were "clear" to State Farm that Snyder's claim had been worth that much, there is simply no reasonable explanation for why they would not have accepted Snyder's offer of settling the case for $50,000 on the morning of trial. All the evidence in the record, taken together, reveals that State Farm simply made an erroneous (and costly) miscalculation as to how much money a jury was likely to award Snyder for his injuries. ***A miscalculation such as this is not a basis for determining that an insurer's conduct was unreasonable or in bad faith—to rule otherwise would run the risk of turning every case in which an insurer and an insured were not able to reach a settlement and the insured went on to win a large verdict into a case for bad faith refusal to pay against the insurer.***

*Id.* at 460–61 (emphasis added); *see also Collins*, 438 F. App'x at 249 ("[T]he fact that the parties had different estimations of the value of a claim is not, under South Carolina law, evidence of bad faith on the part of the party offering the lower amount."). This is precisely the unsupportable basis on which Plaintiff rests his bad faith refusal to pay claim. *See* [ECF No. 33, Second Am. Compl. ¶ 51, 57, 59, 73, 75 (stating that his UIM carrier acted in bad faith by "failing to reasonably investigate and evaluate the claim evaluate and pay Dr. Wilson's claim which resulted in its improper refusal to pay before filing suit in the UIM case", "Progressive's bad faith arises from its failure to reasonably evaluate and pay Dr. Wilson's claim based on the information it had and available to it", and "[a]fter its obligation to pay coverage was due, Progressive improperly refused to pay and forced Dr. Wilson to take affirmative actions, including filing a UIM lawsuit….").

As the South Carolina Supreme Court has stated: ***"[W]e do not condone the idea an insurer may incur bad faith liability for simply taking a case to the jury, when the insurer satisfied the judgment after trial*** …." *Reeves*, 434 S.C. at 36, 862 S.E.2d at 257 (emphasis added).

**C.  Any actions of Progressive Northern after Plaintiff filed this lawsuit on March 26, 2025 are irrelevant and outside the scope of discovery.**

As the South Carolina Supreme Court explained, in the context of a claim for first party coverage:

> Whether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time the suit was filed. *See Nationwide Mutual Insurance Co. v. Clay*, 525 So.2d 1339, 1342 (Ala.1987). ***Evidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal. See id. Likewise, if the insurance company did not specifically deny the claim evidence that arises after the filing of the bad faith claim is not relevant. Thus, testimony concerning the adjuster's handling of the claim after litigation commenced was irrelevant.*** *See Associate Management, Inc. v. E.D. Sauls Constr. Co.*, 279 S.C. 219, 305 S.E.2d 236 (1983) (evidence that does not tend to establish or to make more or less probable some matter in issue and does not bear directly or indirectly thereon is irrelevant).

*Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 448–49, 450 S.E.2d 582, 584 (1994) (emphasis added); *Portrait Homes - S.C., LLC v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 442 S.C. 515, 572, 900 S.E.2d 245, 276 (Ct. App. 2023). Directly contrary to this mandate, Plaintiff's Second Amended Complaint states: "Progressive's bad faith should be considered based on the information available to it at the time it evaluated Dr. Wilson's claim and through the time this lawsuit was supplemented with new and additional improper conduct of Progressive." [ECF No. 33, Second Am. Compl. ¶ 54].

Plaintiff filed this action on March 26, 2025. [ECF No. 1, Compl.]. Consequently, any actions Progressive Northern took with respect to the handling of Plaintiff's UIM claim after Plaintiff's filing – either in this action, in the Underlying Action, or elsewhere – are irrelevant to Plaintiff's bad faith claim and cannot be the basis of such claim. *See Howard*, 316 S.C. at 448–49, 450 S.E.2d at 584.

Plaintiff's Second Amended Complaint includes sections entitled "Additional Improper Post Filing Conduct" and "Improper Appeal." [ECF No. 33, Second Am. Compl. ¶¶ 40-50]. These sections of Plaintiff's Complaint and any other parts of Plaintiff's Complaint mentioning conduct on or after March 26, 2025 or premising claims on such conduct should be struck from Plaintiff's Complaint. They are not relevant to this action and cannot be the basis for a bad faith claim. Additionally, they cannot be the basis for discovery, since there is a relevancy limitation to the scope of discovery. [2]

### D. As a matter of law, Progressive Northern's March 24, 2025 settlement offer is not a valid basis for a bad faith claim.

Removing the irrelevant allegations premised on conduct after Plaintiff filed this lawsuit, Plaintiff's bad faith claim boils down to: (1) whether it was bad faith to litigate the Underlying Action (rather than paying the Policy UIM limits before that lawsuit); and (2) whether it was bad faith to make a March 24, 2025 settlement offer. *See* [ECF No. 33, Second Am. Compl. ¶¶ 69-75].

As a matter of law, it was not bad faith for Progressive Northern to exercise its statutory right to defend the Underlying Action and wait to pay the Policy limits until after resolution of that action. Plaintiff took $340,000 less than the available liability limits, which provided a reasonable basis for contesting whether Plaintiff's damages actually exceeded the available liability limits. Therefore, Plaintiff's first ground fails as a matter of law.

Plaintiff's Complaint alleges that less than ten (10) days after the trial court in the Underlying Action entered judgment in Plaintiff's favor, Progressive Northern's counsel sent a

---

[2] *See* Fed. R. Civ. P. 26(b) (limiting the scope of discovery to "non-privileged matter that is <u>relevant</u> to any party's claim or defense and proportional to the needs of the case….") (emphasis added); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018) ("[T]he scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) <u>relevant to a claim or defense</u> and (3) proportional to the needs of the case.") (emphasis added).

settlement offer. [ECF No. 33, Second Am. Compl. ¶¶ 31, 35]. At that time, the Underlying Action had not concluded, and Progressive Northern had the right to appeal that action. *See* Rule 203, SCACR (allowing a notice of appeal to be served within thirty (30) days after receipt of written notice of entry of the order granting or denying a Rule 50 motion). According to Plaintiff's Complaint, Progressive Northern's March 24, 2025 settlement offer was as follows:

> My client stands prepared to cut a $500,000 check in full satisfaction of the judgment in this matter. In exchange, all parties would agree to forego any post-trial motions and any bad faith actions. Please let me know if that is acceptable to your client. Thanks.

[ECF No. 33, Second Am. Compl. ¶ 35]. As explained above, Progressive Northern had a reasonable basis for contesting Plaintiff's UIM claim, as a matter of law, and was entitled to litigate the Underlying Action to completion. Therefore, Plaintiff had no valid bad faith claim against Progressive Northern. Nevertheless, Progressive Northern was willing to give up its appellate rights in the Underlying Action to avoid the expense of defending any future, non-meritorious bad faith action that Plaintiff might bring.

The making of this settlement offer is not a valid basis for a bad faith claim. As the Supreme Court in *Hood* recognized, once the liability carrier settles and the UIM carrier steps into the motorist's shoes to litigate the UIM action for its own benefit, the insured and the UIM carrier are participating in an adversarial action. Consequently, the UIM carrier is permitted to act as "any other party would be expected to act in the adversarial process." *Hood*, 445 S.C. at 13, 910 S.E.2d at 774. The insurer is "not required to simply hand over the UIM policy limits to [the insured]." *Id.* at 13, 910 S.E.2d at 773.

In *Snyder v. State Farm Mut. Auto. Ins. Co.*, the UIM insurer made a similar settlement offer – an underlying trial to determine if UIM coverage is owed but one where the parties "would have been precluded from appealing the jury's verdict and from asserting a claim against [the UIM

insurer] for bad faith." 586 F. Supp. 2d 453, 455 (D.S.C. 2008). The court held that these settlement actions were not bad faith and explained:

> [I]t is not the role of the courts to impose rigid rules and guidelines upon the conduct of parties in the settlement process. Settlement negotiations are best served by as much flexibility as possible so long as the parties are negotiating in good faith, as this allows both parties to make proposals which are best suited to serve their particular needs. Artificial constraints or requirements placed upon the options available to the bargaining parties would generally only serve to frustrate attempts to reach a mutually agreeable settlement.

*Id.* at 460. Thus, Plaintiff's Complaint does not set forth any valid basis to support his bad faith claim, much less make a *prima facie* showing of bad faith.

## ARGUMENT

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b). Thus, "the scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense and (3) proportional to the needs of the case." *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018). "[T]he party seeking discovery has the burden to establish its relevancy." *Id.*; *Accolla v. Speedway, LLC*, No. 0:17-CV-01972-JMC, 2017 WL 5523040, at *2 (D.S.C. Nov. 17, 2017) ("party seeking discovery has the burden to establish its relevancy"); *see also Guilford Nat. Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962) (stating that there is a "relevancy standard…imposed by Rule 26(b)"). Plaintiff seeks discovery outside the bounds of these constraints.

I.    **Plaintiff is not entitled to discovery concerning anything <u>on or after March 26, 2025</u> – at the latest – all of which is irrelevant under South Carolina law.**

As the South Carolina Supreme Court explained, in the context of a claim for first party coverage:

Page 12 of 23

> Whether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time the suit was filed. *See Nationwide Mutual Insurance Co. v. Clay*, 525 So.2d 1339, 1342 (Ala.1987). ***Evidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal.*** *See id.* ***Likewise, if the insurance company did not specifically deny the claim evidence that arises after the filing of the bad faith claim is not relevant. Thus, testimony concerning the adjuster's handling of the claim after litigation commenced was irrelevant.*** *See Associate Management, Inc. v. E.D. Sauls Constr. Co.*, 279 S.C. 219, 305 S.E.2d 236 (1983) (evidence that does not tend to establish or to make more or less probable some matter in issue and does not bear directly or indirectly thereon is irrelevant).

*Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 448–49, 450 S.E.2d 582, 584 (1994) (emphasis added); *Portrait Homes - S.C., LLC v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 442 S.C. 515, 572, 900 S.E.2d 245, 276 (Ct. App. 2023).

Plaintiff filed this action on March 26, 2025. [ECF No. 1, Compl.]. Consequently, any actions Progressive Northern took with respect to the handling of Plaintiff's UIM claim after Plaintiff's filing – either in this action, in the Underlying Action, or elsewhere – are irrelevant in this bad faith action. *See Howard*, 316 S.C. at 448–49, 450 S.E.2d at 584.

Although Plaintiff's Motion to Compel recognizes this relevancy limitation set forth by the South Carolina Supreme Court in *Howard*, Plaintiff's Motion attempts to bulldoze right past it and obtain discovery about matters after March 26, 2025. [ECF No. 38, Pl.'s Mot. to Compl. Mem., pp. 9-12 (continuing to seek discovery concerning "post-trial motions, the appeal, and Progressive's basis for withholding post-judgment interest")]. When Plaintiff filed this premature bad faith action, his own actions established a March 25, 2026 absolute cut-off date for discovery. Consequently, under South Carolina law, Plaintiff cannot obtain any discovery from after that date.

Progressive Northern will amend its discovery to produce documents and communicates prior to the date Plaintiff filed this bad faith lawsuit. However, Progressive Northern is not

amenable to irrelevant discovery about actions/communications on or after March 26, 2025. Such

discovery requests are irrelevant and outside the scope of Rule 26's discovery limitations.

**II.      Plaintiff asserts that he is entitled to invade the attorney-client privilege simply because he filed a bad faith action; that is not the way the Fourth Circuit applies South Carolina law.**

As the South Carolina Supreme Court in *In re Mt. Hawley Ins. Co.* recognized, there is

"sanctity of the attorney-client privilege" and a waiver should "not be lightly found." 427 S.C.

159, 176, 829 S.E.2d 707, 717 (2019). It further noted that South Carolina has a policy of "strictly

construing the attorney-client privilege and requiring waiver to be distinct and unequivocal." *Id.*

at 177, 829 S.E.2d at 717. The Court stated: "[W]e emphasize the sanctity of the attorney-client

privilege. In this regard, a client does not waive the privilege simply by bringing or defending a

lawsuit." *Id.*

In *ContraVest Inc. v. Mt. Hawley Ins. Co.*, No. 9:15-CV-00304-DCN, 2020 WL 1877911

(D.S.C. Jan. 21, 2020), *aff'd*, No. 20-1915, 2021 WL 4782687 (4th Cir. Oct. 13, 2021), the federal

court certified a question to the South Carolina Supreme Court "concerning the intersection of

attorney-client privilege and insurance bad faith law." *Id.* at *2.[3] After receiving the answer, the

District Court stated that the answer "left both the parties and the court a bit perplexed", but the

District Court set forth a "framework" for these types of issues based on the South Carolina

Supreme Court's answer, and the Fourth Circuit Court of Appeals approved such "framework."

*Id.*

First, "'[w]e assume client and counsel will confer in every case, trading information for

advice. This does not waive the privilege.'" *Id.* at *5 (quoting *State Farm Mut. Auto. Ins. Co. v.*

---

[3] The South Carolina Supreme Court case *is In re Mt. Hawley Ins. Co.*, 427 S.C. 159, 176, 829 S.E.2d 707, 717 (2019).

*Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000)). "We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege." *Id.* "Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege." *Id.*

Under the *Mt. Hawley/ContraVest Inc.* "framework", for attorney-client privilege in the underlying action to be waived in the bad faith action the following must be true: (1) "an insurer asserts a claim or defense that necessarily includes information learned from counsel"; (2) "the truth cannot be found unless that issue is explored"; **and** (3) "the plaintiff makes a *prima facie* showing of bad faith." *Id.* at *3-5.

As the District Court further explained this framework:

> [A]n insurance company could avoid impliedly waiving privilege by relying on objective reasonableness. Indeed, an insurance company could defend a bad-faith action by asserting that its coverage position is objectively reasonable because it is legally correct or based on the language of the policy, period. Even if the insurance company sought advice from counsel to determine if its position was legally correct, privilege would not be waived. As *Lee* explains, privilege is not waived simply because an insurance company consults with an attorney and takes actions based on the attorney's advice. 13 P.3d at 1183. Moreover, implied waiver exists so that an insurance company cannot both use a sword and a shield. If an insurance company simply asserts that its position is legally correct or that the language of its policy supports its position, privilege will not conceal the truth of either of those arguments. Either the law or the court's interpretation of the policy language will show whether the insurer's position was objectively unreasonable. In these scenarios, the truth as to whether the insurer acted in an objectively reasonable manner can be found without exploring advice provided by the insurer's counsel. To impliedly waive privilege, an insurance company must take one step further and assert that its position and handling of the claim is objectively reasonable in part because the insurance company's legal evaluation of the claim or some other fact that necessarily includes information from counsel.
>
> ***
>
> To be clear, Mt. Hawley may have formed its coverage positions after consulting with Mr. Prough. Plaintiffs make that point in their supplemental briefing. ECF No. 200 at 2. But as *In re Mt. Hawley* and *Lee* made clear, that alone does not waive privilege. *In re Mt. Hawley Ins. Co.*, 829 S.E.2d 707, 717 (2019) ("We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege." (quoting *Lee*, 13 P.3d at 1183)).

*Id.* at *6-7.

As explained above, Plaintiff has not satisfied the third requirement of this framework. Plaintiff has not made a *prima facie* showing of bad faith.

In addition, Plaintiff cannot satisfy the first and second requirements of this framework. At this time, Progressive Northern's argument has consistently been that it had an objectively reasonable basis to defend the Underlying Action to completion and wait to pay the UIM coverage until after entry of a final judgment because Plaintiff took $340,000 less than the available liability coverage. *See, e.g.,* [ECF No. 10, Def.'s Mot. to Dismiss Mem.]; [ECF No. 6, Answer ¶¶ 16-17, 20-21, 36-37, 41]; [ECF No. 9, Answer to Am. Compl. ¶¶ 16-17, 20-21, 35-36]; [ECF No. 35, Answer to Second Am. Compl. ¶¶ 15-16, 19, 22]; [ECF No. 20, Def.'s Resp. in Opp. to Mot. to Compel, p. 2].[4]

Plaintiff's actions – not any advice of Progressive Northern's counsel in the Underlying Action – created this objectively reasonable basis for litigating whether Plaintiff's damages exceeded the available liability coverage (as required for UIM coverage). This defense is based on this indisputable fact, the plain language of the policy ("legally entitled to recover" from an underinsured motorist), and South Carolina Code § 38-77-160. *See* (Ex. B, Covenant Not To Execute); (Ex. A, Policy, p. 19); and S.C. Code § 38-77-160 ("The insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability…In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured by payment of its applicable liability limits on behalf of its insured, the underinsured motorist insurer may assume control of the defense of action for its own

---

[4] On April 30, 2025, Progressive Northern filed a Motion to Dismiss on this basis [ECF No. 10]. That Motion is pending before the Court.

benefit."). Therefore, Progressive Northern has not asserted a "defense that necessarily includes information learned from counsel", much less one where "the truth cannot be found unless that issue is explored" in discovery of attorney-client communications. *See ContraVest Inc.*, No. 2020 WL 1877911, at *3-5.

However, Plaintiff's Motion to Compel repeatedly calls into question whether Progressive Northern listened to the advice of its counsel in the Underlying Action. [ECF No. 38, Pl.'s Mot. to Compl Mem., pp. 7, 17]. Although Plaintiff cannot satisfy the Fourth Circuit framework for invading the attorney-client privilege in a bad faith action, in an effort to squash this speculation, Progressive Northern is willing to produce its claim materials before March 26, 2025 documenting what advice its counsel in the Underlying Action, Jeffrey Crudup, gave Progressive Northern and produce him for a deposition concerning the same.

As demonstrated by Plaintiff's own pleadings, the crux of the dispute in the Underlying Lawsuit was Plaintiff's valuation of his alleged lost wages claim. *See* [ECF No. 1, Compl. ¶¶ 47, 60-61 (alleging that "Dr. Wilson is retiring early from his job as a pediatric ophthalmologist at the Medical University of South Carolina and Storm Eye Institute, with a loss of future income exceeding **$3,000,000**" and that the jury verdict was "for $**3,350,000** in actual damages")] (emphasis added); [ECF No. 8, Am. Compl. ¶ 18] (same). Without such claim, his alleged damages would not have reached the UIM coverage. *See* [*id.*].[5]

This lost wage claim assumes future income from an alleged "early retirement" at age 70. *See* [ECF No. 1, Compl. ¶¶ 47, 60-61 (alleging that "Dr. Wilson is retiring early from his job as a pediatric ophthalmologist at the Medical University of South Carolina and Storm Eye Institute,

---

[5] *See also* [ECF No. 10-1, Def.'s Mot. to Dismiss Mem. p. 9 n.2 and p. 6 n.1 (discussing the $1.5 million liability coverage set off)].

with a loss of future income exceeding $3,000,000")]. Noticeably in his Complaint, Plaintiff did not allege that he was unable to return to work as a result of the accident, only that he will be "retiring early." *See* [*id.*]. According to Plaintiff's own Memorandum filed in the Underlying Action: (1) the accident occurred in 2021; (2) the accident damaged his femur; (3) as a result of the accident, he will be retiring "early" from his ophthalmology practice in December 2025 – more than four years after the accident – at the age of 70; and (4) alleging that he planned to continue in his current profession until age 80. (Ex. E, Pl.'s Mem. in Opp. to Def.'s Mot. for New Trial, pp. 2-3). Obviously, a jury was free to believe or not believe that: (1) age 70 was an "early retirement"; (2) this "early retirement" was casually related to the accident that occurred more than 4 years prior to the alleged "early retirement" date; (3) this "early retirement" was casually related to the Plaintiff's femur injury; and (4) the Plaintiff intended to and could have worked until he was 80 years old. This discovery will show that Progressive Northern's counsel in the Underlying Action found this alleged lost wage claim speculative at best and not supported by the evidence. Again, this is the crux of whether or not Plaintiff's alleged damages reach the UIM coverage. These allegations provide another reasonable basis for disputing the value of Plaintiff's claim.

Progressive in no way agrees to waive its attorney-client privilege with respect to its counsel in this bad faith lawsuit. Moreover, discovery concerning the same would be after March 26, 2025, irrelevant according to *Howard*, and outside the Rule 26 scope of discovery.

## III.     Other Discovery Matters

### A.  Objections

Progressive Northern is agreeable to removing the "General Objections" found on the first pages of its discovery responses. Progressive Northern also consents to removing its attorney-client privilege objections with respect to its counsel in the Underlying Action. However,

Progressive Northern does not consent to removing relevancy objections or attorney-client privilege objections with respect to its counsel in this lawsuit.

### B. Reserve Amounts/Settlement Authority

In his Motion to Compel, Plaintiff argues that he is entitled to "claims reserve amounts" information. [ECF No. 38, Pl.'s Mot. to Compel Mem., p. 20]. As the South Carolina Supreme Court in *Hood* explained:

> Other jurisdictions have found that **an insurer does not have to disclose its reserves or settlement authority, even as discovery in a bad faith action, because this information does not "reflect an admission by the insurance company that a claim is worth a particular amount of money**." *Silva v. Basin W., Inc.*, 47 P.3d 1184, 1190 (Colo. 2002) (en banc). In insurance law, "reserves" are "the funds insurance companies set aside to cover future expenses, losses, claims, or liabilities." *Id.* at 1189 (citing Black's Law Dictionary 1307 (6th Ed. 1990))….It explained that an insurer's loss reserves were not the same as settlement authority as the "main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's potential liability." *Id.* (quoting *Lipton v. Superior Ct.*, 48 Cal.App.4th 1599, 56 Cal. Rptr. 2d 341, 349 (1996); *See, e.g.*, S.C. Code Ann. § 38-9-180 (2015) (setting forth the methods for insurers to calculate reserve amounts).
>
> The Colorado court noted that a reserve amount "does not automatically authorize a settlement at that figure." *Silva*, 47 P.3d at 1189 (quoting Lipton, 56 Cal. Rptr. at 349). It also explained, "[s]tatutory requirements, limitations in the evaluation, and bargaining tactics limit the usefulness of reserves and settlement authority as valuations of a claim." *Id*. at 1190.

*Hood*, 445 S.C. at 13–14, 910 S.E.2d at 774; *see also Imperial Textiles Supplies Inc. v. Hartford Fire Ins. Co.*, No. 6:09-CV-03103-JMC, 2011 WL 1743751, at *4 (D.S.C. May 5, 2011) (holding reserve information is not relevant or discoverable in bad faith action where first-party coverage is sought). Likewise, the South Carolina has recently held that "an insurance company's reserves do not act as an objective valuation of a claim's value." *Id.* at 15, 910 S.E.2d at 774. Therefore, such amounts are not relevant in this action and should not be discoverable.

### C. Personnel Files of Adjusters

Plaintiff's actual Request for Production No. 8 is as follows:

> Produce the complete personnel file for Peter Majewski and any other claims adjuster or handler who was involved in the evaluation, handling, or decision-making relating to Dr. Wilson's UIM claim. This request includes but is not limited to:
> o Job applications and resumes
> o Training certifications and continuing education records
> o Performance evaluations
> o Disciplinary records or complaints
> o Promotion or bonus documentation
> o Internal audits or file reviews
> o Any memos or notes referencing the handling of claims, claim philosophies, or compliance with company policies

(Ex. F, Plaintiff's Discovery Requests). Thus, Plaintiff is requesting the "complete personnel file" for any "claims adjuster or handler" who had anything to do with this UIM claim.

This case is about whether Progressive Northern did or did not have a reasonable basis for contesting Plaintiff's UIM claim. Plaintiff has the burden to show that the discovery he seeks is relevant and proportional to the needs of the case. *Mach. Sols., Inc.*, 323 F.R.D. at 526 (The "party seeking discovery has the burden to establish its relevancy and proportionality."). The Plaintiff's Motion to Compel fails to set forth any rational basis for how the personnel files of adjusters are relevant as to whether Progressive Northern had a reasonable basis for contesting Plaintiff's UIM claim. *See* [ECF No. 38, Pl.'s Mot. to Compel Mem., p. 21].

Plaintiff claims the relevant information in these personnel files is "experience, training and performance reviews". [ECF No. 38, Pl.'s Mot. to Compel Mem., p. 21]. Obviously, this is a much narrower scope than Plaintiff's actual request – "complete personnel file". As the South Carolina district court in *American Modern Select Ins. Co. v. Crain* explained:

> In light of the confidential and proprietary nature of the materials contained within personnel files, there is a strong public policy against mandating their disclosure.

> Accordingly, production of an entire file should not be ordered when less intrusive means of discovery are available.

No. 3: 14-CV-2952-TLW, 2015 WL 11027031, at *1 (D.S.C. July 24, 2015). In its responses to Plaintiff's discovery requests, Progressive Northern has identified the four employees involved in handling Plaintiff's UIM claim – James Moody, Patrick Colangelo, Peter Majewski, and Anthony Jordan. (Ex. G, Def.'s First Supplemental Answers to Pl.'s Interrogs.). A less intrusive means of discovery would be for Plaintiff to seek information about these persons' employment history through a deposition. *See Crain,* 2015 WL 11027031, at *1 (allowing less intrusive discovery of "employment history through a deposition").[6]

Moreover, Progressive Northern is willing to produce a company witness to testify that no employee who handled the subject claim was disciplined or reprimanded for their handling of the subject claim or rewarded for their handling of the subject claim. *See* [ECF No. 38, Pl.'s Mot. to

---

[6] Likewise, another district court reached the same result in a bad faith case:

> [T]ese requests are due to be denied entirely for impermissibly seeking discovery of personnel files. Because public policy strongly disfavors the discovery of personnel files, they are discoverable "only if '(1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.'" *Coker [v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998)] (quoting *Cooperman v. One Bancorp*, 134 F.R.D. 4 (D. Me. 1991)). Here, these materials are not clearly relevant, and are not as reasonably calculated to lead to admissible evidence as financial-type incentives. And, in any event, the fact that some information concerning an individual employee might be recorded in personnel files is not enough to usurp the public policy against disclosing those files. Plaintiffs have "not shown that any information in any particular employee's personnel file is directly relevant for any other reason, such as impeachment," and that it cannot be obtained in other ways (such as at deposition).

*Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-02148-JHH, 2016 WL 1319697, at *8 (N.D. Ala. Apr. 5, 2016).

Compel Mem., p. 21 (arguing that this interrogatory is relevant to see "how it [Progressive Northern] treats adjusters whose $15,000 offers turn into [larger verdicts]")].

### D.  Mr. Majewski's Communications and Notes

Plaintiff's Motion to Compel seeks "Richard Majewski's communications and notes before, during and after trial, including notes he took during trial." [ECF No. 38, Pl.'s Mot. to Compel Mem., p. 18]. Progressive Northern is willing to produce such notes and communications up to the date Plaintiff filed this bad faith action – but not any notes/communications on or after that date. As explained above, anything after that date is irrelevant under the South Carolina Supreme Court's holding in *Howard*.

### E.  Internal Bad Faith Reports

Plaintiff's Motion to Compel seeks "internal reports, audits, reviews, or memoranda discussing allegations or findings of systemic bad faith claims handling or unfair settlement practices involving UIM claims within the last 10 years." [ECF No. 38, Pl.'s Mot. to Compel Mem., p. 21]. Progressive Northern does not have any internal reports, audits, reviews, or memoranda discussing allegations or findings of systemic bad faith claims handling or unfair settlement practices involving UIM claims within the last 10 years.

### F.  Request for Production No. 15

Plaintiff's Request for Production No. 15 states: "Produce all documents, including photographs, diagrams, video footage, medical illustrations, or other visual aids relating to the Plaintiff's claim or the defense *of this action*." (Ex. F, Plaintiff's Discovery Requests) (emphasis added). With respect to this Request for Production, Plaintiff's Motion to Compel states: "The underlying tort litigation is over – how could this be privileged?" [ECF No. 38, Pl.'s Mot. to Compel

Mem., p. 17]. As shown by the Request itself, it seeks materials related to this bad faith action, which is ongoing. Consequently, work-product objections are most certainly valid.

## **CONCLUSION**

Any discovery on or after that date Plaintiff filed this bad faith action is irrelevant and not within the scope of discovery. Progressive Northern will amend its discovery responses as set forth herein. Although Plaintiff has not satisfied the Fourth Circuit framework for invading the attorney-client privilege, Progressive Northern will produce discovery concerning communications with its counsel in the Underlying Action. Otherwise, Progressive Northern respectfully requests that Plaintiff's Motion to Compel be denied.

*s/J.R. Murphy*
J.R. Murphy, Esquire (Fed. I.D. No 3119)
Murphy & Grantland, P.A.
P.O. Box 6648
Columbia, SC  29260
803-782-4100
Attorney for Defendant Progressive Northern
Insurance Company

July 28, 2026